## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JAY MCMILLIAN,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.:  19-cv-2665** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **BP SERVICE, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## RENEWED JOINT MOTION FOR APPROVAL
## OF FAIR LABOR STANDARDS ACT SETTLEMENT

Plaintiff Jay McMillian ("Plaintiff' or "McMillian") and Defendant BP Service, LLC ("Defendant" or "BP"), by and though their respective counsel, hereby move the Court for an Order approving their settlement of Plaintiff's claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*  In support of their joint motion, the parties submit that the settlement reached resolves a bona fide dispute regarding Plaintiff's entitlement to claimed overtime wages, and that the terms of the settlement are fair and reasonable to all parties.  For the reasons set forth herein, the parties request that the Court grant their Renewed Joint Motion for Approval of Fair Labor Standards Act Settlement and approve the Parties' Settlement Agreement (Exhibit 1 hereto).

### I.     Factual Background

Plaintiff McMillian was employed at Defendant's gas station convenience store from approximately January 2010 until approximately August 21, 2019.  Defendant BP Service, LLC is a gas station, convenience store, and automobile service station located at 10700 W. 87th Street, Lenexa, Johnson County, Kansas 66214.

Prior to September 14, 2018, Defendant BP paid Plaintiff on a salary basis. Plaintiff alleged that his job duties as a store clerk were such that he was not exempt from overtime compensation. From approximately September 15, 2018 until his voluntary resignation on August 30, 2019, Defendant BP paid Plaintiff on an hourly basis.  Plaintiff alleged that, throughout his employment, he worked approximately forty-five to fifty hours each week and Defendant BP failed to pay Plaintiff the overtime premium of one half his regular rate for all hours worked over forty in a work week.  Defendant denies these claims.

On October 29, 2019, Plaintiff filed a Complaint alleging violations of the Fair Labor Standards Act 29 U.S.C. 201, *et. seq.* ("FLSA") due to Defendant's failure to pay overtime wages.  (*See* Complaint, Doc. No. 1).

## II.     Early Resolution

On November 21, 2019, the Parties began discussing resolving this matter via telephone. On November 26, 2019, Plaintiff provided a settlement demand to Defendant.  On November 26, 2019, Defendant filed an Unopposed Motion for Extension of Time to File its Responsive Pleading to Plaintiff's Complaint (Doc. No. 5), because the Parties' were engaged in discussions to explore early resolution of this case.  The Parties' reached an agreement to settle the case on December 10, 2019.   The terms of the settlement are set forth in the executed Settlement Agreement and Release, attached as Exhibit 1 hereto.

## III.    Legal Arguments and Authorities

### A.      Standard for Approving Settlement of Fair Labor Standards Act Claims

"When employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination whether the settlement is fair and reasonable."  *Valdez v. Southeast Kan. Indep.*

*Living Res. Ctr., Inc.*, Case No. 10-1194-KHV/DJW, 2011 U.S. Dist. LEXIS 3346, at *1 (D. Kan. March 9, 2011) (citations omitted). "To approve an FLSA settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned and (3) the proposed settlement contains an award of reasonable attorney fees." *Valdez*, 2011 U.S. Dist. LEXIS 3346, at *4 (citations omitted). If a proposed settlement reflects a "reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *See id.* at *1, fn. 2 (citing *Lynn's Food Stores*, 679 F.2d at 1354).

### 1.  Bona Fide Dispute

Parties requesting court approval of an FLSA settlement must "provide the Court with sufficient information to determine whether a bona fide dispute exists." *Valdez*, 2011 U.S. Dist. LEXIS 3346, at *4 (citing *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1241 (M.D. Fla. 2010)). To do so, the parties should provide the court with the following information:

> (1) a description of the nature of the dispute (e.g. a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Id.* (citing *McCaffrey*, 2011 U.S. Dist. LEXIS 1096, 2011 WL 32436 at *2)).

Parties dispute whether Plaintiff was exempt from overtime compensation and the amount of overtime worked by Plaintiff. Defendants argue that Plaintiff's job duties fall within the executive exemption of the FLSA. Plaintiff, however, denies that he had authority to hire or

fire other employees, or that Defendant gave particular weight to his suggestions and recommendations as to the hiring, firing, advancement, promotion of other employees.

Plaintiff calculated his damages for unpaid overtime as $7,033.59 as explained below. From the beginning of his employment until approximately September 2018, BP paid Mr. McMillian on a salary basis. The amount of weekly salary varied during his employment from $575 to $650. From approximately October 29, 2016 until September 14, 2018, Mr. McMillian alleged he worked approximately, on average, fifty hours per week. Plaintiff alleged that BP was required to pay Mr. McMillian the overtime premium of one-half his regular rate for all hours worked over forty during a work week. Therefore, Plaintiff alleged that from October 29, 2016 until September 14, 2018, BP failed to pay Plaintiff $5,717.90 in overtime compensation. Defendant denies Plaintiff was entitled to overtime compensation under the applicable law.

Beginning on approximately September 15, 2018, BP began compensating Mr. McMillian on an hourly basis. Plaintiff's hourly rate varied between $13.00 per hour and $13.50 per hour and he allegedly worked on average forty-five hours each week during this time period. However, Plaintiff alleges BP failed to pay Mr. McMillian his overtime premium for all hours worked over forty each week. Therefore, Plaintiff alleges that from September 15, 2018 until August 30, 2019, BP failed to pay him $1,315.69 in overtime compensation. Again, Defendant disputes Plaintiff is entitled to overtime compensation, relying on the executive exemption. Therefore, Plaintiff's total alleged liquidated damages for the statutory period are $14,067.18.

While both Parties dispute whether Plaintiff was exempt from overtime compensation, both Parties recognize the risks associated with litigation. Under the proposed settlement agreement, Plaintiff would receive $7,323.60 for payment of alleged back wages and liquidated damages. The Parties submit that based on the above, a bona fide dispute exists as to the amount

of overtime actually worked by Plaintiff and whether Plaintiff was exempt from overtime compensation.

### 2.    Fair and Reasonable Settlement

"To be fair and reasonable, an FLSA settlement must be reasonable to the employee and must not frustrate the policies embodied in the FLSA." *Valdez*, 2011 U.S. Dist. LEXIS 3346, at *4. This Court has stated that the framework for "evaluating the fairness of a class action settlement is instructive" in evaluating whether an FLSA settlement is fair and reasonable. *Id.* at *7. The Tenth Circuit Court of Appeals has considered the following factors when deciding whether to approve a class action settlement under Fed. R. Civ. P. 23(d):

> (1) whether the parties fairly and honestly negotiated the settlement; (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Id.*

In addition, courts consider the additional factors when determining that a proposed settlement does "not undermine the purpose of the FLSA to protect employees' rights from employers who generally wield superior bargaining power," being the following:

> (1) the presence of other employees situated similarly to plaintiffs; (2) a likelihood that plaintiffs' circumstances will recur and (3) a history of FLSA non-compliance by defendant or others in defendant's industry.

*Id.* at *8.

Here, the Parties fairly and honestly negotiated the settlement. The Parties discussed their respective positions regarding whether Plaintiff was exempt from overtime compensation. The Parties submit that the settlement is fair and reasonable resolution of a bona fide dispute between the parties.

First, the settlement was fairly and honestly negotiated with each party advocating its position.  Second, serious questions of law and fact create doubt as to the ultimate outcome of the litigation.  Questions as to whether Plaintiff's job duties and responsibilities fall within the executive exemption from overtime compensation creates doubt as to the outcome of the litigation.  Both parties would offer conflicting evidence regarding the amount of hours allegedly worked by Plaintiff.  Furthermore, the Parties would offer conflicting evidence regarding Plaintiff's specific job duties.

Third, the uncertainty of protracted litigation weighs in favor of an immediate settlement. If this matter were to proceed, the Parties would need to engage in written discovery and depositions of the Parties. The Parties would further incur additional expenses in preparing for and conducting a jury trial for a determination on the number of overtime hours actually worked by plaintiff.  Given the factual disputes regarding the amount of overtime hours worked and the costs and risks involved in litigating the matter though a jury trial compared to the total amount of overtime claimed by plaintiff, the uncertainty of litigation weighs in favor of an immediate settlement.  Fourth, the Parties' execution of the Settlement Agreement demonstrates that the parties find the resolution to be fair and reasonable.

### 3.    Reasonable Attorneys Fees

The Parties further request that the Court approve requested fees and expenses in the amount of $5,347.40.  "The FLSA also requires that a settlement agreement include an award of 'a reasonable attorney's fee . . . and costs of the action.'"  *Fulton v. TLC Lawn Care, Inc.*, No. 10-2645-KHV, 2012 U.S. Dist. LEXIS 68777, 2012 WL 1788140, at *12 (D. Kan. May 17, 2012) (citing 29 U.S.C. 216(b)).  "Though the Court has discretion to determine the amount and reasonableness of the fee, the FLSA fee award is mandatory."  *Id*. (citations omitted).  "To

determine whether the negotiated amount of attorney fees is reasonable, the Court must examine whether plaintiffs' counsel are adequately compensated and ensure that a conflict of interest does not taint the amount plaintiffs receive under the agreement." *Valdez v. Southeast Kan. Indep. Living Res. Ctr., Inc.*, Case No. 10-1194-KHV/DJW, 2011 U.S. Dist. LEXIS 3346, at *8 (D. Kan. March 9, 2011) (citations omitted).

The settlement provides that Plaintiff's counsel receive $5,347.40 in attorneys' fees and expenses.  As of March 3, 2020, Plaintiff's counsel's accrued lodestar is in the amount of $7,145.50 and expenses in the amount of $465.00.  Exhibits 2 and 3 attached hereto provide Plaintiff's counsel's detailed time entries and case expenses.  In light of the results achieved for their clients, Plaintiff's counsel should be awarded the requested fees and costs.

### *JOHNSON* FACTORS

Regarding the fees sought, the Tenth Circuit has directed that this Court should consider the 12 factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  *Rosenbaum v. MacAllister*, 64 F.3d at 1439 1445 (10th Cir. 1995).  The *Johnson* factors include: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorneys due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.*  A review of the *Johnson* factors supports the Plaintiff's request for fees and costs.

1.      **The Time and Labor Required and the Preclusion of Other Work Due to Acceptance of This Case (Factors 1 and 4).**

As detailed in Exhibits 2 and 3, as of March 11, 2020, prosecuting this case to a successful settlement has required 23.2 hours of time by attorneys and 8.97 hours by a paralegal. Such hours include time spent investigating the factors, reviewing documents, communicating with Plaintiff, calculating damages, and negotiating a settlement. This work necessarily diminished the time available for Plaintiff's counsel to pursue other matters. Additionally, Brady & Associates is a small law firm, which only recently decreased from three to two attorneys, so that the devotion of such time to a case with risk, such as this, necessarily entails a preclusion of work on other cases.

This Court has applied a "lodestar cross-check" to determine whether fees sought are reasonable, *See Cox v. Sprint Comm'ns. Co., L.P.*, 2012 U.S. Dist. LEXIS 162576, *11-12 (D.Kan. Nov. 14, 2012). Plaintiff's counsel's lodestar is $7,145.50 at their standard hourly rates. The proposed settlement provides for attorneys fees and costs in the amount of $5,347.40. The out-of-pocket costs paid by Plaintiff's counsel amounted to $465.00 which was the cost of filing the case and serving the Defendant. Thus, calculated on a lodestar basis, the fees provided for in the settlement do not constitute any "windfall" to Plaintiffs Counsel and should therefore be approved. *Compare Bruner v. Sprint/United Mgmt., Co.*, 209 U.S. LEXIS 60125 at *20 (D. Kan. July 14, 2009) *with Sanderson v. Unilever Supply Chain, Inc.,* 2011 U.S. Dist. LEXIS 145794 at *1-6 (W. D. Mo. December 19, 2011). Moreover, Brady & Associates will continue to perform work, such as fielding inquiries from Plaintiff on this case until effectuating settlement payments to Plaintiff. Plaintiff's counsel will be performing this work without any additional compensation beyond what is sought herein.

2.       **Novelty and Difficulty; Skill Required; Undesirability of Case (Factors 2, 3 and 10):**

Plaintiffs' Counsel assumed risk of failing to recover their investment of time and costs in this action due to the legal hurdles in the matter.  As discussed, Defendant argued that Plaintiff was exempt from overtime compensation based on the executive exemption.   Defendant additionally disputed the amount of weekly hours worked by Plaintiff.

Whether Plaintiff would qualify for the executive exemption based on his job duties, such as the proportion of time spent on managerial v. non-managerial work and his role in supervising employees, presented difficult questions. Moreover, determining actual hours worked in a case where a plaintiff alleges additional work hours but the plaintiff did not maintain his own records of hours worked presents hurdles.

Additionally, whether the standards of "willfulness" for the three-year statute of limitations and liquidated damages apply in this case pose difficult questions. Absent a "willful" violation of the FLSA, the relevant statute of limitations is only two years, whereas the relevant statute of limitations is three years for a willful violation. 29 U.S.C. § 255(a).  If the Defendant's actions were in "good faith" as to compliance with the FLSA, Plaintiff's damages would be limited to any unpaid overtime wages, and would not include liquidated damages.  29 U.S.C. § 260.

Therefore, this case necessitated particularized skill and knowledge of the FLSA duties test for the executive exemption and of the FLSA generally. Notwithstanding such difficult questions, Plaintiff's counsel obtained substantial relief for the Plaintiff.  Absent particularized knowledge, skill and willingness to assume risk by Plaintiff's counsel, it is exceptionally unlikely that the Plaintiff would have obtained the substantial relief represented by the settlement.

3.      **The Results Obtained (Factors 8):**

Plaintiff's counsel obtained a favorable result for Plaintiff in this case.  The settlement provides for Plaintiff to receive $7,323.60.  As discussed above, Plaintiff estimated that his total overtime damages as $7,033.59 for the three year statutory period and liquidated damages for the entire statutory period are $14,067.18.  BP vehemently contended that Plaintiff was exempt from overtime compensation and disputed the amount of weekly hours worked by Plaintiff.  Despite such risks, Plaintiff's settlement amount allows him to recover in excess of his actual estimated overtime damages for a three-year period.

4.      **The Customary Fee; Whether it is Fixed or Contingent; the Experience, Reputation and Ability of the Attorneys; Awards in Similar Cases (Factors 5, 6, 9, 12)**

The various hourly rates requested by Plaintiffs' Counsel are reasonable and acceptable hourly rates in the relevant market.  Attached hereto and marked as Exhibit 4 is an affidavit of Michael Downey.  Mr. Downey is one of the foremost experts in the local region concerning legal ethics related to billing practices of lawyers, particularly in the Kansas City and St. Louis areas.  Exhibit 4, Paragraph 6.  Mr. Downey opines and explains that the hourly rates of Ms. Ballew are reasonable.  Exhibit 4, Paragraph 10.   The specific hourly rates of Sara Ballew ($250) used to calculate the lodestar in this case, are reasonable.  Exhibit 4, Paragraphs 9 through 12.  Moreover, the hourly rate of $150 for paralegals at Brady & Associates is also reasonable. Exhibit 4, Paragraph 10.

Moreover, this court has found that an hourly rate greater than the $325 rate requested for most of the work devoted to this case to be reasonable.  See *Crux Subsurface, Inc. v. Black & Veatch Corp.*, 2011 WL 6180890 (D. Kan. Dec.13, 2011) (finding that a $350 hourly rate in Kansas City, Missouri to be reasonable); *Seamands v. Sears Holding Corp.*, 2011 WL 884391 (D. Kan. March 11, 2011) (holding that, in an employment action, an hourly rate of $400 is

10

reasonable for counsel experienced in class action litigation even though counsel did not have particular expertise in employment-related matters). Similarly, courts have approved settlements as to the hourly rates requested herein. *E.g., Sanderson,* 2011 W.L. 6369395 at *2.

Due to the fact that the Plaintiff was not able to pay attorney fees up front, his contract for legal services with Plaintiff's counsel provides that the case was taken on a contingency fee basis. Thus, if unsuccessful, Plaintiff's counsel would not be paid fees or reimbursed their out-of-pocket expenses; such risk demands a market premium. *E.g., In re Oracle Sec. Litig.,* 131 F.R.D. 688, 693 (N.D. Cal. 1990). "A contingency fee may permissibly be greater than what an hourly fee lawyer of similar qualifications would receive for the same representation. A contingent-fee lawyer bears the risk of receiving no pay if the client loses and is entitled to compensation for bearing that risk." (Exhibit 4, Paragraph 12 (citing Kansas Rule of Professional Conduct 1.5(a)(8), and quoting Restatement (Third) of the Law Governing Lawyers (2000) § 35 comment c). Plaintiff agreed to Plaintiff's counsel's typical contingency fee agreement of 40% of any recovery, and this settlement provides for a 40% fee in addition to reimbursement for the $465 in out-of-pocket expenses. Plaintiff's counsel assumed the risk of taking this case on a contingency fee basis, and such risks warrant a premium in the relevant market.

More generally, Plaintiff's counsel possesses particularized skill, experience, and ability to litigate these types of claims, as detailed below. Brady & Associates have experience litigating large scale wage and hour class and collective actions involving various complexities as to compensable work time, overtime exemptions, and misclassification of employee status. For example, Brady & Associates has been lead counsel in wage and hour class actions against Lowe's Home Centers, Case No. 2002-cv-0259 (D.Kan.), Capital One Home Loans, Case No.

2007-cv-02282 (D.Kan.), General Nutrition Corporation, Case No. 2006-cv-02330 (D.Kan.), and Parsons Construction, Case 2006-cv-04281 (W.D. Mo.).  Michael F. Brady has presented seminars on Fair Labor Standards Act issues at regional conferences, and enjoys an active role in the employment law community.

Sara Ballew has practiced at Brady & Associates since May 2013.  She has primarily focused on state and federal wage and hour cases involving individual plaintiffs and class and collective actions in addition to employment discrimination and False Claims Act *qui tam* cases. Sara graduated from the University of Kansas School of Law in May 2012 where she was the symposium editor of the Kansas Journal of Law and Public Policy, and her article *Amendments to the Kansas Workers Compensation Action in Light of Bergstrom v. Spears Manufacturing Company* was published in the Journal.

Kathy Corcoran satisfies the requirements established by the Kansas Bar Association to perform work as a "legal assistant/paralegal".  Attached hereto as Exhibit 5 is a copy of the "Official Standards and Guidelines for the Utilization of Legal Assistants/Paralegals in Kansas" of the Kansas Bar Association (2004).  Ms. Corcoran has accrued more than 14 years of law-related experience under the supervision of an attorney, including more than one year of in-house training as a paralegal, while at Brady & Associates.  Ms. Corcoran therefore has satisfied "Standard III" to perform paralegal work.  (Exhibit 5, p. 2).  Mr. Downey, as a foremost expert in the legal ethics of attorney billing rates in the local area, attests that an hourly billing rate of $150 per hour is reasonable for paralegals such as Ms. Corcoran.  (Exhibit 4, Paragraph 10).

Typically, this Court applies the percentage of the fund method when awarding fees in common fund, FLSA collective actions.  *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).  In Fee awards in such cases "have ranged from four per cent to 58 per cent of the common fund and

resulted in total fee awards ranging from a few thousand dollars to over $5 million." *See Bruner v. Sprint/United Mgmt., Co.*, 209 U.S. LEXIS 60125 at *27 (D. Kan. July 14, 2009). This case, however, is an individual FLSA settlement, not a common fund collective action settlement. The FLSA entitles prevailing plaintiffs to recover their reasonable attorneys' fees. 29 U.S.C. § 216(b). Although the amount of wages owed to Plaintiff would not continue to accrue in this case, Plaintiff's counsel's fees would continue to accrue and could easily dwarf Plaintiff's claim. The Parties agreed to the settlement amount understanding that the FLSA is a fee-shifting statute. As the Supreme Court has explained, "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (discussing fee awards in the context of a fee-shifting statute).

The reputation, ability, and skill of the attorneys at Brady & Associates were indispensible in reaching this settlement for the benefit of Plaintiff, which supports the reasonableness of the fees sought herein.

## IV.     CONCLUSION

The Parties submit that the proposed settlement agreement is fair and reasonable and should be approved. The instant lawsuit involves a bona dispute regarding the amount of overtime hours actually worked by Plaintiff and whether Plaintiff was exempt from overtime compensation, the settlement is fair and equitable to Plaintiff and Defendant, and the settlement contains an award of reasonable attorney fees. The proposed settlement reflects a reasonable compromise regarding the computation of back wages and the Court should approve the settlement. For these reasons, the Parties respectfully request that the Court grant their Renewed Joint Motion for Approval of Fair Labor Standards Act Settlement and enter an Order approving

the Parties' Settlement Agreement and finding the Agreement is a fair, equitable and reasonable resolution of the disputed claims and dismissing the action with prejudice, with each party to bear their own costs and attorneys' fees incurred in this action.

Respectfully submitted,

**BRADY & ASSOCIATES**

By:  *s/Sara T. Ballew*
Sara T. Ballew, KS #25787
10985 Cody Street, Suite 135
Overland Park, KS 66210
(913) 696-0925
(913) 696-0468 *(Facsimile)*
sballew@mbradylaw.com

**ATTORNEY FOR PLAINTIFF**

And

**FOLAND, WICKENS, ROPER, HOFER & CRAWFORD, P.C.**

By:  *s/Jacqueline M. Sexton*
Jacqueline M. Sexton, KS # 53262
1200 Main Street, Suite 2200
Kansas City, Missouri 64105
(816) 472-7474;
(816) 472-6262 *(Facsimile)*
jsexton@fwpclaw.com

**ATTORNEY FOR DEFENDANT**